# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN REYNOLDS,            Civil Action No. 25-172

      Plaintiff,

v.

ALTERA DIGITAL HEALTH,

      Defendant.            JURY TRIAL DEMANDED

## CIVIL COMPLAINT

Plaintiff Sean Reynolds, by undersigned counsel, files this civil complaint and in support alleges the following:

### I. Jurisdiction

1. The Jurisdiction of this Court is invoked pursuant to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, U.S.C. §2000e-5(f)(3), as amended by the Civil Rights Act of 1991 and 28 U.S.C §§1343(a)(3) and (a)(4) and 1331.

2. Plaintiff has satisfied all procedural and administrative prerequisites to suit under Title VII, in that:

   a. He filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging race discrimination and retaliation on November 6, 2023 and cross filed with the Pennsylvania Human Relations Commission ;

   b. The EEOC issued a Notice of Right to Sue on January 23, 2025;

   c. This Complaint is filed within 90 days of receipt of that notice; and

   d. More than one year has lapsed since the date Plaintiff filed his PHRC complaint.

3. Defendant is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in

that it employs more than 15 individuals.

## II. The Parties

4.      Plaintiff Sean Reynolds is an African American male who resides at 7141 McPherson Boulevard, Pittsburgh, Allegheny County, PA 15208.

5.      Defendant Altera Digital Health is a corporation with its principal place of business at 2429 Military Road, Niagara Falls, Niagara County, NY 14304. At all times relevant Defendant was Reynold's employer.

## III. Factual Background

6.      Plaintiff was employed by Defendant since April 19, 2021 as a senior desktop support analyst.

7.      Plaintiff worked for Defendant at St. Clair Hospital in Mount Lebanon and was one of the only African Americans in its IT department.

8.      In August, 2021, Plaintiff voiced his concerns to Defendant's Human Resources about race discrimination in the workplace.

9.      Plaintiff's complaint included writings on white board in the office "we don't work with darkness" and verbal remarks made by a staff member walking by his office grunting and mumbling the work "black nigger."

10.     Plaintiff also addressed other issues which he believed to be because of his race including a non-willingness by management and staff to work with, collaborate or train regarding job duties.

11.     Defendant hired a Caucasian employee four (4) months after Plaintiff and this individual was being onboarded and trained within a month.

12.     The Caucasian employee was also assigned job duties and received full

2

collaboration from staff and management also including cross training with other IT department staff for advancement.

13.     Defendant's Human Resources assured Plaintiff that his complaint would be kept confidential until she could investigate.

14.     However, confidentiality was not kept.

15.     Moreover, Plaintiff was subject to a pattern of antagonism after his initial complaint.

16.     Following Defendant's investigation, Plaintiff was also subjected to weekly meetings with his manager.

17.     Plaintiff applied for promotions after his complaint, but was told the interview process could not go through because of the one on one meeting with his manager.

18.     However, the Caucasian staff member who had said "black nigger" under his breath was promoted.

19.     On September 29, 2023, Plaintiff had a meeting with his manager where an error that had happened during down time and testing was resolved.

20.     Plaintiff had previously been notified of the issue via email and team chat.

21.     The error issue was then brought back up for review during the ongoing weekly one on one meeting.

22.     Plaintiff asked if the issue was being highlighted and targeted as major issue.

23.     His manager responded that he can make it negative along with anything Plaintiff's says or does while working there.

24.     Plaintiff then said he was documenting this as this action was not right.

25.     Plaintiff's manager then became visibly upset and replied, "I am done with you"

3

and slammed his laptop closed aggressively, pushed back from the desk and left the meeting while mumbling "black bastard."

26. Plaintiff reported the racial comment to Defendant's Human Resources.

27. Two weeks later on October 18, 2023, he was fired and given the reason that he was unhappy.

### Count I
### 42 U.S.C. §1981
### Race Discrimination and Retaliation

28. Plaintiff incorporates by reference the allegations in Paragraph 1 to 27.

29. Defendant fired Reynolds because of his race.

30. Defendant also fired Reynolds in retaliation for complaining of racial discrimination.

31. Defendant's actions in firing Reynolds because of his race, and in retaliation for complaining of race discrimination, deprived Reynolds of the same right to make and enforce contracts as is enjoyed by white citizens in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

32. Defendant's discharge of Reynolds was undertaken with reckless indifference to Plaintiff's federally protected right to make and enforce contracts irrespective of their race and/or their opposition to race discrimination.

33. As a result of Defendant's discriminatory and retaliatory treatment, Reynolds was fired his job on October 18, 2023 and has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff demands judgment against Defendant pursuant to 42 U.S.C. §1981

as follows:

    a.    That Defendant be permanently enjoined from discriminating against Reynolds or retaliating against Reynolds because of his race or because he opposed race discrimination;

    b.    That defendant be ordered to employ and Reynolds to the position occupied on October 18, 2023, together with all benefits incident thereto, including but not limited to wages, benefits, training and seniority;

    c.    That Defendant be required to compensate Reynolds for the full value of wages and benefits each would have received had it not been for Defendant's illegal treatment, with interest thereon until the date Reynolds is offered re-employment into a position substantially equivalent to the one Reynolds occupied on October 18, 2023;

    d.    That Reynolds be awarded compensatory and punitive damages in an amount to be determined at trial;

    e.    That Reynolds be awarded against Defendant the costs and expenses of this litigation, and a reasonable attorney's fee; and

    f.    That Reynolds be awarded such further relief as this Court deems to be just and proper.

## Count II
## Title VII, Race Discrimination

34.    Plaintiff incorporates by reference the allegations in Paragraph 1 to 33.

35.    Defendant discharged and otherwise discriminated against Plaintiff because of his race in violation of Title VII, of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981A.

36.    Defendant's actions in discharging Reynolds because of his race was undertaken intentionally and with reckless indifference to Plaintiff's federally protected right to be free from discrimination in employment decisions because of his race.

37.    As a result of Defendant's race discrimination against Plaintiff, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss

of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981A against Defendant as follows:

    a.    That Defendant be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII.

    b.    That Defendant be ordered to employ Reynolds to the position from which he was fired on October 18, 2023, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority

    c.    That Defendant be required to compensate Plaintiff for the full value of wages and benefits Plaintiff would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest thereon until the date Plaintiff is offered employment into a position substantially equivalent to the one from which Defendant fired Reynolds on October 18, 2023.

    d.    That Plaintiff be awarded compensatory and damages in an amount to be determined at trial.

    e.    That Plaintiff be awarded punitive damages.

    f.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney fee.

    g.    That Plaintiff be awarded such further relief as this Court deems to be just and proper.

### Count III
### Title VII, Retaliation

38. Plaintiff incorporates by reference the allegations in Paragraph 1 to 37.

39. Plaintiff opposed racial comments and conduct in the workplace which he in good faith believed was illegal conduct under federal and state anti-discrimination laws.

40. Plaintiff's opposition to racial comments were in good faith opposition to discriminatory employment practices, which is protected activity under Title VII, 42 U.S.C. §2000e-

3(a).

41. Following Plaintiff's opposition to racial comments, Defendant retaliated against Plaintiff by firing him.

42. Defendant thus retaliated against Plaintiff because he opposed conduct made illegal under Title VII, 42 U.S.C. §2000e-3(a).

43. As a result of Defendant's illegal retaliation against Plaintiff, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff Sean Reynolds demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a. That Defendant be ordered to reinstate Plaintiff into the position he occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b. That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied on October 18, 2023;

c. That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

d. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

e. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

f. That Defendant be ordered to pay plaintiff punitive damages;

      g.      That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

      h.      That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee;

      i.      That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count IV
## PHRA

44.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 43 as if fully restated herein.

45.     Defendant's firing of Reynolds violated the PHRA, 43 Pa. Conns. Stat. Ann. §955(a) et seq.

46.     As a direct result of Defendant's violation of the PHRA, Reynolds has lost wages and other economic benefits of his employment with Defendant, in addition to emotional distress, anxiety, humiliation and inconvenience.

WHEREFORE, Plaintiff requests the following:

      a.      That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Human Relations Act;

      b      That Defendant be ordered to instate Plaintiff and provide him accumulated seniority, fringe benefits and all other rights;

      c.      That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

      d.      That the Court award Plaintiff compensatory damages as a result of Defendant's violations of the Pennsylvania Human Relations Act;

      e.      That Defendant be enjoined from discriminating against Plaintiff in any

|     | manner that violates the Pennsylvania Human Relations Act; |
| --- | --- |
| f.  | That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and |
| g.  | That the Court grant Reynolds additional relief as may be just and proper. |

Respectfully submitted,

**Quatrini Law Group**

*/s/ John E. Black, III*
John E. Black, III
PA I.D. No. 83727
941 Penn Avenue, Suite 101
Pittsburgh, PA 15222
Telephone: (724) 717-8272
Facsimile: (724) 837-1348
jeb@qrlegal.com

Attorney for Plaintiff